1

2

3

4

5            IN THE UNITED STATES DISTRICT COURT

6           FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    REBECCA S. LANE,                          Case No.  22-cv-06827-CRB

9              Plaintiff,
                                               **ORDER GRANTING**
10       v.                                    **DEFENDANT'S MOTION TO**
                                               **DISMISS**
11   LAKE COUNTY HOUSING
     COMMISSION,
12
               Defendant.
13

14        Plaintiff Rebecca S. Lane ("Plaintiff") brings this action against Defendant Lake

15   County Housing Commission ("Defendant"), alleging violations of the Fair Housing Act

16   ("FHA"), California's Fair Employment and Housing Act ("FEHA"), Section 504 of the

17   Rehabilitation Act ("RA"), Title II of the Americans with Disabilities Act ("ADA"), and

18   the Fourteenth Amendment.  Corrected First Amended Complaint ("FAC") (dkt. 30).

19   Plaintiff alleges that Defendant failed to provide reasonable accommodations for her

20   disability when it refused to assist her in purchasing a residence under Section 8's

21   Homeownership Option ("HO")—a federal housing program that allows local public

22   housing agencies to offer low-income families assistance in buying a home.  Id. ¶13.

23   Initially, Plaintiff brought suit pro se.  Compl. (dkt. 1).  After obtaining counsel, Plaintiff

24   filed a corrected amended complaint.  See generally FAC.  Now pending is Defendant's

25   motion to dismiss Plaintiff's first amended complaint, which argues that: (1) Plaintiff fails

26   to state a claim under Rule 12(b)(6); and (2) Plaintiff's claims are barred by the statute of

27   limitations.  Motion to Dismiss First Amended Complaint ("MTD") (dkt. 33-1).

28   Additionally, both parties have filed requests for judicial notice ("RJN").  See generally

Def.'s RJN (dkt. 33-2); Pl.'s RJN (dkt. 38).  For the reasons stated below, the Court GRANTS the motion to dismiss as to all claims.

## I.      BACKGROUND

Plaintiff is a disabled individual.  FAC ¶ 8.  Defendant is a public housing agency ("PHA") that provides housing services for low-income families in Lake County with funding from the California Department of Housing and Community Development and the United States Department of Housing and Urban Development ("HUD").  Id. ¶ 9.

### A.      Statutory Background

In 1974, Congress established the Section 8 program "[f]or the purpose of aiding lower-income families in obtaining a decent place to live and of promoting economically mixed housing."  Housing and Community Development Act of 1974, Pub. L. No. 93-383, § 8(a), 88 Stat 663, 662 (1974) (codified at 42 U.S.C. § 1437f).  Under 42 U.S.C. § 1437f ("Section 8"), local PHAs are authorized to offer different housing programs.

The Homeownership Option ("HO") is the component of the Section 8 program at issue here.  FAC ¶ 13.  The HO provides low-income families with assistance in purchasing homes for residential use.  Id.  Under 42 U.S.C. § 1437f(o)(15), a PHA administering Section 8 tenant-based assistance programs "may, at the option of the agency, provide assistance for homeownership under subsection (y)."  A PHA may alternatively "contract with a nonprofit organization to administer a homeownership program under subsection (y)."  Id.  The HO allows Section 8 tenant-based assistance, which would otherwise subsidize rent, to be used to cover a participating family's mortgage and other homeownership costs.  See 24 C.F.R. § 982.625, et seq.

Two additional federal regulations govern the HO program: 24 C.F.R. § 982.601(b)(3) and 24 C.F.R. § 982.625(d)(2).  24 C.F.R. § 982.601(b)(3), which provides an overview of Section 8's special housing types,[1] states that PHAs "must permit use of any special housing type if needed as a reasonable accommodation so that the program is

---

[1] 24 C.F.R. § 982.601(a)(7) lists "homeownership option" as a "special housing type."

United States District Court
Northern District of California

readily accessible to and usable by persons with disabilities in accordance with 24 C.F.R.

part 8." 24 C.F.R. § 982.625(d) regulates a PHA's choice to offer homeownership options:

> (1) The PHA may choose to offer either or both forms of homeownership assistance under this subpart, or choose not to offer either form of assistance.  However, the PHA must offer either form of homeownership assistance if necessary as a reasonable accommodation for a person with disabilities in accordance with § 982.601(b)(3).
>
> (2) It is the sole responsibility of the PHA to determine whether it is reasonable to implement a homeownership program as a reasonable accommodation.  The PHA will determine what is reasonable based on the specific circumstances and individual needs of the person with a disability.  The PHA may determine that it is not reasonable to offer homeownership assistance as a reasonable accommodation in cases where the PHA has otherwise opted not to implement a homeownership program.

Defendant offers multiple housing assistance programs, including the Housing Choice Voucher program ("HCV") and the emergency Housing Voucher Program.  FAC ¶ 27.  The HCV is a Section 8 tenant-based rental assistance program.  Id. ¶ 28.  The HCV program permits housing authorities to offer the HO to assist low-income families purchase a home.  Id. ¶ 29; see 42 U.S.C. § 1437f(o)(15).  However, Defendant has never implemented the program.  FAC ¶ 41.

**B.      Factual Background[2]**

**1.      Plaintiff's Disability**

Plaintiff suffers from Multiple Chemical Sensitivity ("MCS").  Id. ¶ 1.  MCS is a medical condition that causes incapacitating respiratory, muscular, and neurological reactions to low levels of everyday chemicals and electromagnetic frequencies.  Id.  HUD recognizes MCS as a disability.  Id. ¶¶ 8, 25.

Because of her MCS, Plaintiff must avoid exposures that would negatively impact her health.  Id. ¶¶ 2, 23.  This includes avoiding exposure to "common everyday

---

[2] This order accepts as true the allegations from the complaint.  See W. Reserve Oil & Gas Co. v. New, 765 F.2d 1428, 1430 (9th Cir. 1985).

United States District Court
Northern District of California

chemicals, such as ink, fragrances, pesticides, tobacco smoke, laminate cabinets and countertops, air fresheners, personal care and laundry products, solvents, [etc.]" Id. ¶ 20. Exposure to these chemicals causes Plaintiff to suffer symptoms, including migraines, dizziness, fatigue, heart palpitations, respiratory difficulties, joint and muscle pain, etc. Id. ¶ 22.  These symptoms generally confine Plaintiff to her home and make her reliant on an in-home caregiver. Id.  As such, Plaintiff must live in a house that is "free of mold, mildew, and pet dander, and complete with heating, air conditioning, and kitchen appliances tolerable for her. . . .  Her home also must not have a smart meter or be within two miles of a cell tower." Id. ¶ 2.  Plaintiff's doctor also recommends that her home is free of chemicals, lingering odors from fragrances, and scented products used by previous residents. Id. ¶ 24.  Plaintiff's disability makes it difficult to find adequate housing. Id. Defendant has been aware of Plaintiff's disability since May 4, 2016. Id. ¶ 26.

Since on or about June 15, 2016, Plaintiff has received Section 8 tenant-based housing assistance administered by Defendant. Id. ¶¶ 3, 8, 30.  Beginning in December of 2016, Plaintiff's residence suffered water exposure, which resulted in extensive mold contamination. Id.  Because of Plaintiff's MCS, the presence of mold made the space uninhabitable. Id.  Plaintiff's landlord refused to fix the problem due to costs. Id. ¶ 34. Plaintiff's doctor recommended that she "move to a more accessible rental as soon as possible." Id. ¶ 30.

Plaintiff began looking for alternative housing.  After considering more than 70 rentals, Plaintiff was unable to find a rental suitable for her medical needs. Id. ¶¶ 4, 35. Plaintiff remained in the same residence until November 1, 2018. Id. ¶ 36.  Eventually, Plaintiff identified a home for sale that would suit her MCS. Id. ¶ 37.  Owning her own home would allow Plaintiff to control the chemicals and materials in her environment, and thereby limit the impact on her health. Id. ¶ 39.  Plaintiff obtained pre-approval for a U.S. Department of Agriculture low-income loan program. Id. ¶ 38.

1

### 2. Plaintiff's Request for Reasonable Accommodation in the Form of an HO

2

3

4

5

6

7

8

9

10

On or about January 29, 2018, Plaintiff applied for a reasonable accommodation from Defendant in the form of the Section 8 HO.  Id. ¶ 38.  On February 2, 2018, Plaintiff communicated with Defendant's employee, Anette Adkins.  Id. ¶ 40.  Ms. Adkins assured Plaintiff that Defendant intended to assist her in getting her accommodation request approved.  Id.  Ms. Adkins then emailed Carol Joseph, a Portfolio Management Specialist. Id. ¶¶ 41–42.  Ms. Adkins asked Ms. Joseph whether Defendant could "opt out" of offering the HO as a reasonable accommodation if Defendant had otherwise chosen not to implement the program.  Id.  Ms. Joseph directed Ms. Adkins to 24 C.F.R. § 982.625(d)(1) and (2) and 24 C.F.R. § 982.601(b)(3), saying:

11

12

13

14

15

16

> Yes, that is correct, in accordance with 24 C.F.R. 982.625 (d)(1) and (2).  It is the responsibility of the PHA to determine whether the need is necessary as a reasonable accommodation. So, your PHA must follow your reasonable accommodation policy in determining whether it's necessary under the program.  24 CFR 982.601(b)(3) states, 'The PHA must permit use of any special housing type if needed as a reasonable accommodation so that the program is readily accessible to and usable by persons with disabilities in accordance with 24 CFR part 8.

17

Id.

18

19

20

21

22

23

On or about March 29, 2018, Defendant denied Plaintiff's request for a reasonable accommodation in the form of the Section 8 HO.  Id. ¶¶ 5, 47.  The denial explained that Defendant "does not currently operate the Homeownership Program."  Def.'s RJN, 1.[3] Defendant cited a lack of resources and asserted that creating an HO program would create an "unreasonable burden on [their] scarce resources."  Id.  Plaintiff then applied for a review of the denial.  Id. ¶ 48.

24

25

26

On or about April 10, 2018, Defendant denied Plaintiff's request for a review.  Id. ¶ 29.  Again, Defendant stated that creating an HO program would create a financial and administrative burden on their small housing authority.  Id.

27

28

---

[3] As discussed in detail below, the Court will grant Def.'s RJN and Pl.'s RJN.

### 3. Plaintiff's Housing Discrimination Complaint with DFEH

On April 13, 2018, Plaintiff filed a housing discrimination complaint with the California Department of Fair Employment and Housing ("DFEH").[4]  Pl.'s RJN, Exh. 1. The DFEH dismissed Plaintiff's charge due to "insufficient evidence."  Def.'s RJN, Exh. 3.  Plaintiff appealed.  Id.  On November 20, 2020, the DFEH upheld its decision, thereby terminating the administrative process.  Id.

### C. Procedural History

Plaintiff brought suit pro se on November 3, 2022.  See Compl.  Plaintiff eventually obtained pro bono counsel and filed the present amended complaint on October 3, 2023. See generally FAC.  Plaintiff's complaint alleges that Defendant's failure to provide a reasonable accommodation in the form of the requested HO violated the following:

| | | |
|---|---|---|
| Count I. | Fair Housing Act (FHA), 42 U.S.C. §§ 3601, et seq. |
| Count II. | California Fair Employment and Housing Act (FEHA), Cal. Gov't Code §§ 12955, et seq. |
| Count III. | Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. |
| Count IV. | Title II of the American with Disabilities Act, Public Services, 42 U.S.C. § 12131(1) and (2). |
| Count V. | Due Process Rights under the Fourteenth Amendment, 42 U.S.C. § 1983. |

FAC ¶¶ 54–92.

Defendant moves to dismiss Plaintiff's FAC.  See generally MTD.

### D. Requests for Judicial Notice

Both parties have submitted requests for judicial notice pertaining to this motion. See Def.'s RJN; Pl.'s RJN.

---

[4] Initially, Defendant's MTD stated that Plaintiff filed the complaint with DFEH on August 30, 2018.  MTD at 4.  In Defendant's reply brief, Defendant concedes that at this stage in the pleadings, all factual inferences are made in favor of the Plaintiff, and so accepts the April 13, 2018 date.  Def.'s Reply to Pl.'s Opp. at 2 n.2 ("Reply").  Defendant reserves the right to re-address the issue after further factfinding.  Id.

United States District Court
Northern District of California

## II.     LEGAL STANDARD

Dismissal is proper where the complaint fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Dismissal may be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting another source).  A complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Fed. R. Civ. P. 8(a)(2).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Fed. R. Civ. P. 12(b)(6).

When evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of L.A., 828 F.2d 556, 561 (9th Cir. 1987).  A court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  A party may "state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3).

If a court dismisses a complaint for failure to state a claim, it should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2).  A court has discretion to deny leave to amend due to "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir. 2008) (alteration in original) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

## III.    DISCUSSION

First, the Court addresses the parties' requests for judicial notice.  Second, the Court addresses Defendant's argument that Plaintiff's claims are barred by the statute of

limitations.  Finally, the Court addresses Defendant's argument that Plaintiff fails to state a claim for (1) violation of FHA, (2) violation of FEHA, (3) violation of the RA and the ADA, and (4) violation of Due Process under the Fourteenth Amendment.

### A.      Requests for Judicial Notice

Defendant and Plaintiff each request judicial notice of documents that they assert are matters of public record.  For the reasons discussed below, the Court GRANTS the parties' requests for judicial notice.

Defendant asks the Court to take judicial notice of four documents: (1) a March 29, 2018 notice that Defendant sent to Plaintiff denying her request for homeownership assistance as a reasonable accommodation, (2) Plaintiff's complaint of housing discrimination filed with DFEH, signed August 30, 2018, (3) a November 26, 2018 DFEH notice of case closure and dismissal, and (4) a November 20, 2020 DFEH notice of rejection of Plaintiff's appeal and case closure.  See Def.'s RJN.  Defendant contends that the Court should take judicial notice of Defendant's denial notice sent to Plaintiff because it provides the full document, rather than the limited quotations offered in Plaintiff's first amended complaint.  Def.'s RJN, Exh. 1.  Defendant asks the Court to take judicial notice of the documents relating to Plaintiff's housing discrimination claim with DFEH because they are relevant to calculating the appropriate statute of limitations.  Def.'s RJN, Exh. 2–4.

Similarly, Plaintiff seeks judicial notice of a June 5, 2018 letter sent to Plaintiff by Brenda Valle, Staff Services Manager II at the DFEH.  Pl.'s RJN, Exh. 1.  The letter is relevant to the statute of limitations calculation.  Id.

Generally, a district court may not consider any material beyond the pleadings when ruling on a 12(b)(6) motion.  Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018).  However, the Court may take judicial notice of facts that are "not subject to reasonable dispute" because they (1) are "generally known within the trial court's territorial jurisdiction," or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Accordingly,

8

matters of public record may be judicially noticed, but disputed facts contained in those records may not.  Khoja, 899 F.3d at 999.  Courts may take notice of records of state agencies.  See Anderson v. Holder, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012) ("[A court] may take judicial notice of records and reports of administrative bodies.") (internal quotation marks omitted).

The parties' RJNs contain public documents whose accuracy is readily verifiable, and therefore, are the proper subject of judicial notice.  See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006).  Courts in this district have routinely taken judicial notice of records from administrative bodies like the DFEH.  See Wyatt v. City of Burlingame, No. 16-CV-02681-DMR, 2017 WL 565303, at *1 (N.D. Cal. Feb. 13, 2017); Adetuyi v. City & Cnty. Of San Francisco, 63 F. Supp. 3d 1073, 1081 (N.D. Cal. 2014) ("Judicial notice of [the plaintiff's] EEOC Intake Questionnaire and DFEH Charge, the EEOC and DFEH letters indicating receipt of his intake questionnaire and charge of discrimination, and the DFEH right-to-sue letter is also proper.").  Here, the documents come from Defendant and the DFEH and are printed on official letterhead of these administrative agencies.  Neither party disputes the authenticity of these documents or their accuracy.  See Fed. R. Evid. 201(b)(2); Khoja, 899 F.3d at 1001.  Nor are the facts contained in these documents in dispute.  As to Def.'s RJN, Exh. 1, the parties agree that Defendant denied Plaintiff's HO request.  As to Def.'s RJN, Exh. 2–4, the parties further agree that Plaintiff subsequently filed a housing discrimination complaint with DFEH, which DFEH dismissed.  Thus, the Court may take judicial notice of the existence of the documents and the facts recited therein.  See Lee v. City of LA, 250 F.3d 668, 690 (9th Cir. 2001).

One wrinkle is that the parties ask the Court to judicially notice two documents showing contradicting dates on which Plaintiff allegedly filed her housing discrimination complaint with the DFEH.  Defendant asks the Court to judicially notice Plaintiff's complaint of housing discrimination filed with DFEH.  Def.'s RJN, Exh. 2.  This document shows that Plaintiff filed her complaint on August 30, 2018.  Id.  Plaintiff asks

9

the Court to judicially notice a letter sent to Plaintiff by Ms. Valle of the DFEH, stating that Plaintiff's complaint was received on April 13, 2018.  Pl.'s RJN, Exh. 1.  Although the dates cannot both be correct, the Court may properly notice the filing dates stated in the administrative records because the dates "can be accurately and readily determined from" the documents.  See Khoja, 899 F.3d at 1001.  At this stage of the case, the Court will notice both documents and make any factual inferences in favor of Plaintiff, including the date she filed the claim.  See Usher, 828 F.2d at 561.

For these reasons, the Court GRANTS both requests for judicial notice.

## B.    Statute of Limitations

Next, Defendant moves to dismiss Plaintiff's Third, Fourth, and Fifth Causes of Action (the RA, ADA, and Due Process claims)[5] based on the statutes of limitations. MTD at 9, 11.  For the reasons set forth below, the Court does not dismiss those claims as time-barred.

### a.    The RA and the ADA

Neither Section 504 of the RA nor Title II of the ADA contain an express statute of limitations.  In the absence of a federal statute of limitations, federal courts "borrow the statute of limitations applicable to the most analogous state-law claim."  Sharkey v. O'Neal, 778 F.3d 767, 770 (9th Cir. 2015).  The Ninth Circuit has held that California's "three-year statute of limitations for '[a]n action upon a liability created by statute, other than a penalty or forfeiture'" is the applicable statute of limitations for claims arising under Title II of the ADA.  Id. at 773.  The parties agree that the same three-year statute of limitations is applicable to the RA.  Pl.'s Opp. at 7; MTD at 9.  Accordingly, the statute of limitations for Plaintiff's RA and ADA claims is three years.

---

[5] Initially, Defendant also argued that Plaintiff's FHA claim is barred by the relevant two-year statute of limitations.  MTD at 7; Reply at 2 n.2.  However, in light of Pl.'s RJN, Exh. 1 (the letter stating that Plaintiff filed an initial complaint with DFEH on April 13, 2018), Defendant concedes that dismissal based on the statute of limitations would be improper at this stage.  See Reply at 2 n.2.  Defendant reserves the right to re-address the issue after further factfinding.  Id.

1    Plaintiff filed her lawsuit on November 2, 2022, over four years after Defendant's

2    last allegedly unlawful act (the denial of her request for review) on April 10, 2018.  Pl.'s

3    Opp. at 7.  Absent tolling, Plaintiff's claims are untimely because Plaintiff would have had

4    to file her RA and ADA claims within three years—on April 10, 2021.  See Alexopulos v.

5    San Francisco Unified Sch. Dist., 817 F.2d 551, 554–55 (9th Cir. 1987) (the statute of

6    limitations runs from the time the plaintiff knows of the injury that is the basis of the

7    action).  The parties disagree on whether Plaintiff's RA and ADA claims are entitled to

8    equitable tolling.  Pl.'s Opp. at 5; Reply at 3.

9    Generally, questions of equitable tolling are not easily resolved on a 12(b)(6)

10   motion.  "When a motion to dismiss is based on the running of the statute of limitations, it

11   can be granted only if the assertions of the complaint, read with the required liberality,

12   would not permit the plaintiff to prove that the statute was tolled."  Jablon v. Dean Witter

13   & Co., 614 F.2d 677, 682 (9th Cir. 1980).  It is evident from Plaintiff's complaint that

14   Plaintiff should prevail on the equitable tolling issue.

15   "Along with the limitations period, the court borrows the state's equitable tolling

16   rules, absent a reason not to do so."  Daviton v. Columbia/HCA Healthcare Corp., 241

17   F.3d 1131, 1135 (9th Cir. 2001).  In California, the "long settled rule [is] that whenever

18   exhaustion of administrative remedies is a prerequisite to a civil action[,] the running of

19   the limitations period is suspended during the administrative proceedings."  Addison v.

20   State of California, 21 Cal.3d 313, 318 (1978) (citing Dillon v. Board of Pension Commrs.,

21   18 Cal.2d 427 (1941)).  Additionally, the Court may apply equitable tolling even where

22   exhaustion of administrative procedures is non-mandatory.[6]  McDonald v. Antelope Valley

23   Cmty. Coll. Dist., 45 Cal.4th 88, 101 (2008).  "[R]egardless of whether the exhaustion of

24   one remedy is a prerequisite to the pursuit of another, if the defendant is not prejudiced

25   thereby, the running of the limitations is tolled when an injured person has several legal

26   remedies and, reasonably and in good faith, pursued one."  Addison, 21 Cal.3d at 318

27

28   [6] Neither Section 503 of the RA nor Title II of the ADA contain exhaustion requirements.

United States District Court
Northern District of California

(quoting <u>Elkins v. Derby</u>, 12 Cal.3d 410, 414 (1974)); <u>see also</u> <u>McDonald</u>, 45 Cal.4th at 101 ("[t]he exhaustion of administrative remedies will suspend the statute of limitations even though no statute makes it a condition of the right to sue.").

The Ninth Circuit recognizes that California courts apply a three-pronged test to invoke the equitable tolling doctrine. <u>Cervantes v. City of San Diego</u>, 5 F.3d 1273, 1275–76 (9th Cir. 1993). "A plaintiff's pursuit of a remedy in another forum equitably tolls the limitations period if the plaintiff's actions satisfy these factors: 1) timely notice to the defendants in filing the first claim; 2) lack of prejudice to the defendants in gathering evidence for the second claim; and 3) good faith and reasonable conduct in filing the second claim." <u>Id.</u>  Courts apply the doctrine sparingly. <u>Nelmida v. Shelly Eurocars, Inc.</u>, 112 F.3d 380, 384 (9th Cir. 1997). "The burden is on the plaintiff to show that equitable tolling is appropriate." <u>United States v. Marolf</u>, 173 F.3d 1213, 1220 (9th Cir. 1999).

Here, Defendant argues that (i) California law does not equitably toll the statute of limitations for RA and ADA claims during the time that a DFEH claim is pending, and (ii) Plaintiff does not meet the third element for equitable tolling because Plaintiff needed to have filed her action relatively soon after the purported tolling period ended.  Reply at 3–4.

### i. Tolling the RA and ADA Claims Based on the DFEH Proceedings

Defendant argues that the Court should not toll Plaintiff's RA and ADA claims because "federal courts applying state law have held that equitable tolling does not apply to section 1983 claims based on the filing of a DFEH complaint, and there is no reason why that logic would not apply with equal force to Plaintiff's ADA and [RA] claims." Reply at 3–4.  In support of this proposition, Defendant relies on <u>Mathieu v. Norrell Corp.</u>, 115 Cal.App.4th 1174, 1189–90 (2004).

Defendant's argument is unpersuasive. First, <u>Mathieu</u> involves a different cause of action. 115 Cal.App.4th at 1189.  <u>Mathieu</u> held that a DFEH administrative charge does not equitably toll an <u>unlawful termination</u> claim. <u>Id.</u> at 1189–90.  <u>Mathieu</u>'s rationale was "that a common law cause of action for discharge in violation of public policy is, in effect,

1   an independent alternative to a FEHA administrative claim and subsequent cause of action

2   under the act." Id.  (citing Rojo v. Kliger, 52 Cal.3d 65, 86 (1990)).  Mathieu further

3   explained that "the putative plaintiff is not in any way disadvantaged by having to file his

4   or her nonstatutory claims before receiving a right-to-sue letter from the DFEH and,

5   therefore, there is no basis for recognizing equitable tolling in this situation."  115

6   Cal.App.4th at 1189.  Defendant does not cite to any case that extends Mathieu's holding

7   to RA or ADA claims.[7]  Nor does Defendant offer any reason why the reasoning in

8   Mathieu would apply to claims arising under the RA or the ADA.

9        Second, Defendant's reliance on Mathieu is unpersuasive in light of McDonald, 45

10  Cal.4th at 101, which post-dates Mathieu.  In McDonald, the California Supreme Court

11  "rejected the assertion that equitable tolling should be limited to cases in which a plaintiff

12  was required to pursue a particular alternative remedy before initiating suit."  45 Cal.4th at

13  101–02.  McDonald emphasized that "[t]he filing of an administrative claim, whether

14  mandated or not, affords a defendant notice of the claims against it so that it may gather

15  and preserve evidence, and thereby satisfies the principal policy behind the statute of

16  limitations."  Id. at 102.  Defendant's argument that a DFEH complaint cannot equitably

17  toll RA and ADA claims in circumstances such as these—where Plaintiff's DFEH

18  discrimination claims were similar to those filed in the present lawsuit—contradicts the

19  principal policy behind the statute of limitations.  Here, Plaintiff's DFEH discrimination

20

21  _____

22  [7] Defendant cites to Lowe v. City of Sausalito, No. C 06-6892 PJH, 2007 WL 196639, at
    *1 (N.D. Cal. Jan. 24, 2007), to support the proposition that Mathieu extends to Section
    1983 claims (and therefore should also extend RA and ADA claims).  Reply at 4.
23  However, Lowe only applied Mathieu, 115 Cal.App.4th at 1174, to a wrongful termination
    claim.  Lowe, at *1.  Lowe did not apply Mathieu to the Section 1983 claim, much less to
24  any RA or ADA claims.  Courts have mostly only applied Mathieu in cases involving
    wrongful termination claims and FEHA.  See, e.g., Rivera v. Lawrence Livermore Nat'l
25  Sec., LLC, No. 16-CV-00304-PJH, 2016 WL 3092087, at *3 (N.D. Cal. June 2, 2016);
    Tanner v. Kaiser Found. Health Plan, Inc., No. C 15-02763-SBA, 2015 WL 7770216, at *5
26  (N.D. Cal. Dec. 3, 2015); McEnroe v. AT&T Mobility Servs. LLC, No. 15-CV-02190-
    HSG, 2015 WL 5168671, at *2–*4 (N.D. Cal. Sept. 3, 2015) (distinguishing Mathieu as
27  limited to the FEHA context); Villalvaso v. Odwalla, Inc., No. 1:10-CV-02369-OWW,
    2011 WL 1585604, at *8–*9 (E.D. Cal. Apr. 25, 2011); Gardner v. Pediatrix Med. Grp.,
28  No. C-09-1325 MMC, 2009 WL 2394368, at *1 (N.D. Cal. Aug. 4, 2009).

1    complaint properly notified Defendant of the claims against it because the allegations

2    within the DFEH complaint and the subsequent RA and ADA claims arose from the same

3    set of circumstances.  See FAC ¶¶ 66–82; Def.'s RJN, Exh. 2.  Plaintiff reasonably chose

4    to pursue her claims with the DFEH first because the DFEH appeared to offer Plaintiff an

5    opportunity to formally resolve the dispute via an administrative process that would

6    minimize—or eliminate—the need for further judicial proceedings.  The DFEH

7    administrative proceedings that Plaintiff pursued here offered precisely the sort of benefits

8    equitable tolling is designed to preserve and accordingly may support equitable tolling.

9         For these reasons, the Court concludes that equitable tolling may apply to RA and

10   ADA claims based on the filing of a DFEH complaint.

### ii.    "Good Faith and Reasonable Conduct"

12        Even if equitable tolling may apply to Plaintiff's RA and ADA claims, Plaintiff's

13   pursuit of administrative remedies will not automatically result in equitable tolling.  See

14   McDonald, 45 Cal.4th at 102.  The next inquiry is whether Plaintiff meets the three-

15   pronged test for invocation of equitable tolling.  See Collier v. City of Pasadena, 142

16   Cal.App.3d 917, 924 (1983).  For equitable tolling to apply, a plaintiff must establish three

17   elements: (1) timely notice, (2) lack of prejudice, and (3) good faith and reasonable

18   conduct.  Id.  Defendant argues only that Plaintiff fails to meet the third element.  Reply at

19   4–5.  The Court disagrees.

20        Accepting Plaintiff's allegations as true and construing them in the light most

21   favorable to her, Plaintiff meets the "good faith and reasonable conduct" prong.  Courts

22   have not clearly defined "good faith and reasonable conduct."  McDonald, 45 Cal.4th at

23   102 n.2.  However, the California Supreme Court has stressed the importance of filing the

24   second claim a short time after the tolling ended.  Addison, 21 Cal.3d at 321.  For example,

25   the Ninth Circuit has explained that a court might find bad faith if "a plaintiff simply

26   allowed the statute on his second claim nearly to run."  Daviton, 241 F.3d at 1138 (citation

27   omitted).  Additionally, "[a]pplying California law, courts in this circuit have barred

28   application of equitable tolling based on delays in filing the second action."  Audio Mktg.

United States District Court
Northern District of California

Servs., S.A.S. v. Monster Cable Prod., Inc., No. C 12-04760 WHA, 2013 WL 633202, at
*7 (N.D. Cal. Feb. 20, 2013) (emphasis added); see also Collier, 142 Cal.App.3d at 924
("[p]erhaps, if a plaintiff delayed filing the second claim until the statute on that claim had
nearly run, even after crediting the tolled period, his conduct might be construed as
unreasonable."); but see Retail Clerks Union Loc. 648 v. Hub Pharmacy, Inc., 707 F.2d
1030, 1035 (9th Cir. 1983) (noting that some cases "focus upon a plaintiff's reason and
good faith in choosing to file the first action.").

Defendant argues that Plaintiff acted unreasonably because Plaintiff waited nearly
two years to file this lawsuit on November 3, 2022. See Reply at 4–5. Defendant argues
that "[u]nder no circumstance can [Plaintiff's nearly two-year delay] be considered
reasonable." Reply at 5. However, Defendant has not asserted that it has been prejudiced
by Plaintiff's delay in filing the present lawsuit or that Plaintiff acted in bad faith. See e.g.,
Fanucci v. Allstate Ins. Co., 638 F. Supp. 2d 1125, 1139 (N.D. Cal. 2009) (third factor is
satisfied because "there is no evidence [the plaintiff] acted in bad faith); Collier, 142
Cal.App.3d at 926 ("if the plaintiff deliberately misled the defendant into believing the
second claim would not be filed, that action might be deemed to constitute bad faith."); see
also Daviton, 241 F.3d at 1136 (the purpose of limitations statutes is to "prevent surprises
through the revival of claims that have been allowed to slumber until evidence has been
lost, memories have faded, and witnesses have disappeared") (quotations omitted);
Structural Steel Fabricators, Inc. v. City of Orange, 40 Cal.App.4th 459, 465 (1995)
("intentionally lulling 'the defendant into believing the second claim would not be filed . . .
might be deemed to constitute bad faith.'") (quoting Collier, 142 Cal.App.3d at 926).[8]

---

[8] Plaintiff does not plead any facts explaining her failure to diligently file suit after the
administrative proceedings ended. Plaintiff merely states that she filed her initial
complaint pro se on November 3, 2022 and has since "worked with counsel to identify
additional claims based on the same set of facts previously pled." Pl.'s Opp. at 6–7. Some
courts have held that unreasonable delays in filing the second action might be a factor that
could bar equitable tolling. See, e.g., Retail Clerks Union Loc. 648, 707 F.2d at 1036
(interpreting the doctrine to require that plaintiff acted reasonably "both when it first filed
the NLRB proceeding and when it later waited until April 1981 to file the [second
action]") (emphasis in original). However, there is no bright-line rule on how long is too
long to render a delay in filing "unreasonable." Equitable tolling is a "judicially created,

Plaintiff acted reasonably by promptly filing her administrative claim on April 13, 2018—three days after Defendant's last unlawful act. Pl.'s RJN, Exh. 1. This alerted Defendant to "the need to begin investigating the facts that form the basis" of Plaintiff's claims, see Collier v. City of Pasadena, 142 Cal.App.3d 917, 924 (1983). During the relevant time period—the DFEH proceedings—Defendant knew that Plaintiff was actively pursuing her administrative remedies. After the administrative proceedings ended on November 20, 2020, Plaintiff filed this lawsuit on November 3, 2022. See Def.'s RJN, Exh. 4; Compl. At this stage of the case, the Court lacks a sufficient basis for determining that Plaintiff does not satisfy third element to invoke equitable tolling. See Cervantes, 5 F.3d at 1277 ("[t]he sole issue is whether the complaint, liberally construed in light of our 'notice pleading' system, adequately alleges facts showing the potential applicability of the equitable tolling doctrine") (emphasis in original). Accordingly, the Court will strike the balance in Plaintiff's favor. If the tolling doctrine is not applied, Plaintiff would be denied a hearing on the merits of her claim. See Addison, 21 Cal.3d at 316 (the purpose of equitable tolling "is to soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court.").

The Court, in its discretion, concludes that Plaintiff is entitled to equitable tolling for the period she pursued a remedy with the DFEH—from April 13, 2018 to November 20, 2020. Because the statute of limitations was tolled during the period in which Plaintiff pursued administrative relief, Plaintiff had two years and 263 days—until November 17,

---

nonstatutory doctrine," that is "designed to prevent unjust and technical forfeitures of the right to a trial on the merits when the purpose of the statute of limitations—timely notice to the defendant on the plaintiff's claims—has been satisfied." McDonald, 45 Cal.4th at 99. Courts should "liberally appl[y] tolling rules . . . to situations in which the plaintiff has satisfied the notification purpose of a limitations statute." Elkins, 12 Cal.3d at 418. Here, the Court will exercise its discretion and toll the time in which Plaintiff pursued administrative remedies with the DFEH. There is no evidence that Plaintiff acted in bad faith or engaged in unreasonable conduct in pursuing alternative remedies and subsequently delaying the filing of the present lawsuit. See e.g., Addison, 21 Cal.3d at 321 ("To apply the doctrine of equitable tolling in this case . . . satisfies the policy underlying the statute of limitations without ignoring the competing policy of avoiding technical and unjust forfeitures.").

2023—to file a timely lawsuit.  See Lantzy v. Centex Homes, 31 Cal.4th 363, 370–71 (2003) ("the limitations period stops running during the tolling event and begins to run again only when the tolling event has concluded.").  Plaintiff filed this lawsuit on November 3, 2022.  See Compl.  This falls within the three-year statute of limitations for Plaintiff's RA and ADA claims.  Thus, Plaintiff's claims are timely.

For these reasons, the Court does not dismiss Plaintiff's RA and ADA claims as barred by the statute of limitations.

### b.  Due Process Claim (Section 1983)

Section 1983 also does not contain an express statute of limitations.  The statute of limitations for Section 1983 claims is borrowed from state personal injury tort law.  Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004).  Under California law, personal injury actions have a two-year statute of limitations.  Butler v. Nat'l Cmty. Renaissance of Cal., 766 F.3d 1191, 1202 (9th Cir. 2014).  Accordingly, as the parties agree, the statute of limitations for Plaintiff's Section 1983 claim is two years.  See MTD at 11; Pl.'s Opp. at 7.  Absent tolling, Plaintiff's Section 1983 claims are untimely because Plaintiff would have had to file her lawsuit within two years of the last unlawful act—on April 10, 2020—and did not bring suit until November 3, 2022.  See Compl.; Alexopulos, 817 F.2d at 554–55.

### i.  Tolling the Section 1983 Claims Based on the DFEH Proceeding

Again, Defendant relies on Mathieu, 115 Cal.App.4th at 1189–90, to argue that equitable tolling does not apply to Section 1983 claims based on the filing of a DFEH complaint.  Reply at 3–4.  For similar reasons previously discussed, Mathieu's holding does not extend to Section 1983 claims.[9]  Mathieu held that FEHA administrative claims

---

[9] As discussed, Defendant cites to Lowe, 2007 WL 196639, at *1, in support of the proposition that "federal courts applying state law have held that equitable tolling does not apply to [§] 1983 claims based on the filing of a DFEH complaint."  Reply at 3.  However, Lowe only applied Mathieu's holding to a wrongful termination claim, not to the Section 1983 claim.  See Lowe, 2007 WL 196639, at *1 (citing Mathieu, 115 Cal.App.4th at 1189–90).

United States District Court
Northern District of California

do not equitably toll the statute of limitations for wrongful termination claims because a wrongful termination claim is "an independent alternative to a FEHA administrative claim and subsequent cause of action under the act." Mathieu, 115 Cal.App.4th at 1189. This is not the type of claim that is at issue here. At issue here is a Section 1983 claim that is premised on the same facts that Plaintiff alleged in her DFEH complaint. See Daviton, 241 F.3d at 1137 ("[w]here . . . the complaint alleges that the administrative and judicial claims each involve the same facts and name the same defendant, we find that allowing plaintiffs to offer evidence [supporting equitable tolling] in no way compromises the principal rationale for statutes of limitation"); McDonald, 45 Cal.4th at 101 ("equitable tolling may extend even to the voluntary pursuit of alternative remedies"); see also Elkins, 12 Cal. 3d at 412 ("an awkward duplication of procedures is not necessary to serve the fundamental purpose of the limitations statute, which is to insure timely notice to an adverse party so that he can assemble a defense when the facts are still fresh. The filing of a compensation claim accomplishes this purpose and the tolling of the statute does not frustrate it."). Plaintiff sought to remedy the same harms in her DFEH complaint as in the present lawsuit. Plaintiff's complaint alleges that she was harmed when Defendant failed to provide her reasonable accommodations and failed to provide a sufficient means of redress of the denial. See FAC ¶¶ 84–87. Plaintiff's DFEH complaint contained similar allegations to those in her initial complaint. See Def.'s RJN, Exh. 2 (Plaintiff's DFEH complaint alleging Defendant denied her reasonable accommodation request and "failed to participate in an interactive process before denying [her] request."). Plaintiff reasonably believed that voluntarily pursuing the DFEH's administrative proceedings could result in a remedy without having to resort to further judicial proceedings.

Therefore, equitable tolling may still apply to Plaintiff's Section 1983 claim based on the filing of a DFEH complaint.

### ii.    "Good Faith and Reasonable Conduct"

The next inquiry is whether Plaintiff meets the three-pronged test for equitable tolling of her Section 1983 claim. For the reasons previously discussed, Plaintiff meets the

"good faith and reasonable conduct" prong.  Here, Plaintiff promptly filed her DFEH complaint three days after the last unlawful act.  See Pl.'s RJN, Exh. 1.  Defendant has not alleged that it has been prejudiced by Plaintiff's delay in filing the present lawsuit or that Plaintiff acted in bad faith.

If the Court tolls Plaintiff's claims for the period in which Plaintiff pursued her administrative remedies, Plaintiff's claim is timely.  Plaintiff filed her complaint with the DFEH on April 13, 2018.  Pl.'s RJN, Exh. 1.  Administrative proceedings terminated on November 20, 2020.  Def.'s RJN, Exh. 4.  After the administrative proceedings ended, Plaintiff had one year and 362 days—until November 17, 2022—to file a timely lawsuit.  See Lantzy, 31 Cal.4th at 370–71.  Plaintiff filed the present lawsuit on November 3, 2022.  See Compl.

For these reasons, the Court does not dismiss Plaintiff's Section 1983 Due Process claim as barred by the statute of limitations.

### c.  Conclusion on Statute of Limitations

Accordingly, the Court deems Plaintiff's RA, ADA, and Section 1983 claims timely.

### C.  Failure to State a Claim

Separate and apart from Defendant's statute of limitations argument, Defendant moves to dismiss all of Plaintiff's claims for failure to state a claim.  This section addresses each of Plaintiff's claims: (1) violation of FHA, (2) violation of FEHA, (3) violation of the RA and the ADA, and (4) violation of Due Process under the Fourteenth Amendment.

### 1.  FHA Claim

Defendant moves to dismiss Plaintiff's FHA claim for failing to state a claim upon which relief may be granted.  See MTD at 2.  Plaintiff alleges in that claim that Defendant violated the FHA by failing to provide her with a "reasonable accommodation" when it refused to assist her in purchasing a home under Section 8's HO.  FAC ¶¶ 55–57.  Plaintiff alleges that: (1) she has a disability (id. at ¶ 25); (2) Defendant knew of her disability since

May 4, 2016 (id. at ¶ 26); (3) accommodation in the form of an HO was necessary to afford Plaintiff an equal opportunity to use and enjoyment of a dwelling (id. at ¶ 7); and (4) Defendant refused to make such accommodation (id. at ¶ 5).

The FHA makes it unlawful to discriminate "as to the sale or rental of a Dwelling, or otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap." 42 U.S.C. § 3604(f)(1). The FHA also prohibits discriminating against a handicapped person "in terms, conditions, privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling." 42 U.S.C. § 3604(f)(2). Discrimination under the FHA includes "the refusal to make reasonable accommodations" in "rules, policies, practices, or services" when such accommodations are necessary to a disabled individual's equal enjoyment and use of a dwelling. 42 U.S.C. 3604(f)(3)(B); see also Giebeler v. M & B Assocs., 343 F.3d 1143, 1146–47 (9th Cir. 2003) (noting that the Act "imposes an affirmative duty upon landlords to reasonably accommodate the needs of handicapped persons" with "regard to physical accommodations" and "administrative policies governing rentals.").

A claim alleging a violation of the FHA for failure to accommodate a disability requires the plaintiff to demonstrate that (1) the plaintiff suffers from a disability as defined by the Act; (2) the defendant knew or reasonably should have known of the disability; (3) accommodation of the disability "may be necessary" to afford plaintiff an equal opportunity to use and enjoy the dwelling; (4) the accommodation is reasonable; and (5) the defendant refused to make such accommodation. Salisbury v. City of Santa Monica, 998 F.3d 852, 857–58 (9th Cir. 2021).

Defendant does not dispute that Plaintiff is disabled for the purposes of the FHA, that it knew of Plaintiff's disability, and that it refused to grant the accommodation. Rather, Defendant argues that it has never implemented an HO program and that the FHA does not compel it to provide benefits under a program that it has not implemented. MTD at 6. Thus, whether Plaintiff has stated a claim rests on (a) whether Section 8 and its implementing regulations required Defendant to offer Plaintiff homeownership assistance

as a "reasonable accommodation," and (b) whether accommodation of the disability may be necessary to afford Plaintiff an equal opportunity to use and enjoy the dwelling.

### a.    Reasonable Accommodation

Plaintiff argues that Section 8 and its implementing regulations require PHAs to offer the HO as a reasonable accommodation.  FAC ¶¶ 15–16.  The Court disagrees.

The first basis for the Court's disagreement is the plain language of Section 8 and its implementing regulations.  Both 24 C.F.R. § 982.601(b)(3) and 24 C.F.R. § 982.625(d)(1) use mandatory language.  24 C.F.R. § 982.601(b)(3) provides an overview of the "special housing types."  24 C.F.R. § 982.601(b)(3) states that a PHA "must permit use of any special housing type if needed as a reasonable accommodation so that the program is readily accessible to and usable by persons with disabilities. . . ."  HUD adopted several implementing regulations that specifically govern the HO program.  See 24 C.F.R. § 982.625 et seq.  24 C.F.R. § 982.625(d)(1) states that a PHA "must offer either form of homeownership assistance if necessary as a reasonable accommodation for a person with disabilities."  However, 24 C.F.R. § 982.625(d)(1) is immediately followed by § 982.625(d)(2), which clarifies that a PHA may—but is not required to—offer homeownership assistance.  See 24 C.F.R. § 982.625(d)(2) ("The PHA may determine that is not reasonable to offer homeownership assistance as a reasonable accommodation in cases where the PHA has otherwise opted not to implement a homeownership program.").

The second basis for the Court's disagreement is based on the drafting history of the regulation.  As originally written, the implementing regulations did not include the language found in 24 C.F.R. § 982.625(d)(2).  See 65 Fed.Reg. 55134 (Sept. 12, 2000). The clarifying language first appeared as a response to public comments received on the April 30, 1999, Proposed Rule.  Id. at 55145.  Several commenters wrote to HUD suggesting that the final Section 8 HO rule should define what constitutes a "reasonable accommodation."  Id.  In response to this comment, HUD responded that "reasonable accommodation is determined on a case-by-case basis by the PHA," it is the "sole responsibility of the PHA to determine whether it is reasonable to implement" an HO

1  program as a reasonable accommodation, and "the PHA <u>may</u> determine that it is not

2  reasonable to provide homeownership assistance as a reasonable accommodation in cases

3  where the PHA has otherwise opted not to implement the homeownership program." <u>Id.</u>

4  (emphasis added).  HUD codified the language quoted above in its 2002 amendments.  <u>See</u>

5  67 Fed.Reg. 64484 (Oct. 18, 2002).

6      Based on the plain language of Section 8, its implementing regulations, and the

7  regulation's drafting history, PHAs are not required to provide homeownership assistance

8  as a reasonable accommodation in cases, such as this one, where the PHA has already

9  opted not to implement the program.  Thus, even making all factual inferences in favor of

10  Plaintiff, Plaintiff fails to state a claim under the FHA because the FHA does not require

11  PHAs to exceed the requirements of Section 8 and its implementing regulations.  Section 8

12  and its implementing regulations only require PHAs to implement an accommodation that

13  is reasonable.  <u>See</u> <u>Salisbury</u>, 998 F.3d at 857–58 (prong 4).  "Under the FHA[], [Plaintiff]

14  was entitled to receive [the requested accommodation] if the adjustment . . .  was

15  '<u>reasonable</u>' within the meaning of that statute."  <u>Giebler</u>, 343 F.3d at 1155 (quoting 42

16  U.S.C. § 3604(f)(3)(B)) (cleaned up) (emphasis added).  <u>See also</u> <u>id.</u> at 1154 ("Under the

17  FHA[] . . . only <u>reasonable</u> accommodations that do not cause undue hardship or mandate

18  fundamental changes in a program are required") (emphasis in original)).

19      Plaintiff fails to state a claim under the FHA because the language in 24 C.F.R. §

20  982.625(d)(2) is clear that implementing an HO is not required as a "reasonable

21  accommodation" when a PHA has otherwise opted not to implement the program.

22  Defendant exercised its discretion in determining that implementing an HO program was

23  unreasonable due to financial hardship.  <u>See</u> FAC ¶ 47; Def.'s RJN, Exh. 1.  Nothing in the

24  FHA compels PHAs to implement the HO program as a "reasonable accommodation" if

25  they have otherwise chosen not to implement it.[10]

26

27  _____

[10] Defendant also argues that the reasonable accommodation requirement of §
3604(f)(3)(B) was only intended to address land use decisions, not the provision of
28  benefits provided by a PHA.  MTD at 8.  The Court rejects this argument.

United States District Court
Northern District of California

### b.      Equal Opportunity

Plaintiff argues that Section 8 and its implementing regulations requires PHAs to offer the HO as a reasonable accommodation because accommodation of her disability "may be necessary" to afford her an equal opportunity to use and enjoy a dwelling.  FAC ¶ 55b.  Defendant argues that Plaintiff cannot establish that she was denied an "equal opportunity" to homeownership assistance because it does not offer homeownership assistance to anyone.  See MTD at 8–9.  Defendant argues that § 3604(f)(3)(B) focuses on "equal opportunity," not the creation of special programs.  Id. at 8.  The Court agrees with Defendant.

Defendant's refusal to grant Plaintiff's request for the HO did not deny her an equal opportunity for which she would otherwise be qualified.  See Giebler, 343 F.3d at 1155 ("In addition to causation, equal opportunity is a key component of the necessity analysis; an accommodation must be possibly necessary to afford the plaintiff equal opportunity to use and enjoy a dwelling.").  Plaintiff had an opportunity that was equal to every other applicant in Lake County to access the Section 8 programs that Defendant offered.  See FAC ¶¶ 28–29 (noting that Defendant offers tenant-based Housing Choice Voucher Program and the Emergency Housing Program); MTD at 3 (noting that Plaintiff received tenant-based housing assistance from Defendant).  Because the HO program is not offered by Defendant to anyone, Plaintiff fails to allege a denial of an "equal opportunity."

### c.      Conclusion as to FHA Claim

For these reasons, the Court finds that Plaintiff has failed to state a claim for discrimination under the FHA.  Courts are to "freely give leave to amend when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, leave to amend "may be denied if the proposed amendment either lacks merit or would not serve any purpose because to grant it would be futile in saving the plaintiff's suit."  Universal Mortg. Co. v. Prudential Ins. Co., 799 F.2d 458, 459 (9th Cir. 1986).  Given that Plaintiff would not be able to cure this deficiency with additional allegations, granting leave to amend is futile.  The Court GRANTS Defendant's motion to dismiss the FHA claim and denies leave to amend.

United States District Court
Northern District of California

### 2.      FEHA Claim

Defendant moves to dismiss Plaintiff's FEHA claim for failing to state a claim upon which relief may be granted.  MTD at 2, 14.  Similar to her FHA claim, Plaintiff alleges that Defendant violated FEHA by refusing her request for a reasonable accommodation in the form of an HO.  FAC ¶¶ 61–63.  FEHA makes it unlawful "[f]or the owner of any housing accommodation to discriminate against or harass any person because of the . . . disability . . . of that person."  Cal. Gov't Code § 12955(a).  FEHA also makes it unlawful to "otherwise make unavailable or deny a dwelling based on discrimination" because of disability.  Cal. Gov't Code § 12955(k).  Like the FHA, "discrimination" under FEHA "includes refusal to make reasonable accommodations in rules, policies, practices, or services when these accommodations may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling."  Cal. Gov't Code § 12927(c)(1).  The Ninth Circuit "appl[ies] the same standards to FHA and FEHA claims."  Walker v. City of Lakewood, 272 F.3d 1114, 1131 n.8 (9th Cir. 2001); see also Cabrera v. Alvarez, 977 F. Supp. 2d 969, 975 (N.D. Cal. 2013) ("The provisions of FEHA . . . involved in this case protect substantially the same rights as the FHA provisions . . . and are subject to the same analysis.").

Defendant argues that the Court should dismiss Plaintiff's FEHA claim for the same reasons as her FHA claim.  Reply at 11.  Defendant also adds that the provisions in FEHA do not apply to Defendant because Defendant is a public housing agency, not an "owner of any housing accommodation."  MTD at 14.[11]

### a.      "Owner"

Huynh v. Sanchez, No. 5:14-CV-02367 LHK, 2014 WL 4364846, at *7 (N.D. Cal. Sept. 2, 2014), addresses Defendant's argument about being an "owner" of a housing

---

[11] Plaintiff mistakenly cited to Cal. Gov't Code § 12955(l) in her First Amended Complaint.  FAC ¶ 61.a.  Plaintiff proposes to address this obvious error in an amended complaint, if needed.  Pl.'s Opp. at 12, n.8.   As such, the Court does not address Defendant's arguments pertaining to Cal. Gov't Code § 12955.

24

1    accommodation.[12]  In Huynh, Judge Koh held that a public housing agency in California is

2    an "owner" under FEHA because "the statutory definition of 'owner' includes

3    governmental entities."  Id. at *7.  Additionally, FEHA applies to "rules, policies,

4    practices, or services" that are "necessary to afford" housing, which would encompass

5    Defendant's administration of Section 8 tenant-based housing, even if Defendant is not a

6    "property owner."  Id.  As in Huynh, our case involves a public agency that administers

7    Section 8 vouchers.  FAC ¶ 9.  Although Defendant has not implemented an HO program,

8    the Court would be reluctant to conclude that this exempts Defendant from liability as an

9    "owner" under FEHA.

10                       **b.    Parallels to FHA Claim**

11           However, even if Defendant qualifies as an "owner" under FEHA, Plaintiff still

12   fails to state a claim upon which relief may be granted.  Plaintiff's FEHA claim against

13   Defendant fails for the same reasons that Plaintiff's FHA claim falls short.  See Walker,

14   272 F.3d at 1131 n.8 (the Ninth Circuit "appl[ies] the same standards to FHA and FEHA

15   claims.").  Granting Plaintiff's request for an accommodation in the form of the HO would

16   require implementing an HO program that Defendant has chosen not to implement and is

17   not required to implement.

18                       **c.    Conclusion as to FEHA Claim**

19           Accordingly, the Court GRANTS Defendant's motion to dismiss Plaintiff's FEHA

20   claim and denies leave to amend.

21                   **3.    The RA and ADA Claims**

22           Next, Defendant moves to dismiss Plaintiff's Third and Fourth Causes of Action on

23   the grounds that Plaintiff fails to state a claim upon which relief may be granted.

24   Plaintiff's allegations under the RA and ADA largely track those under the FHA: that

25   _____

26   [12] Defendant distinguishes our case from Huynh, arguing that Huynh dealt with a housing
     authority's method for determining the room per person allocation for disabled recipients

27   Section 8 rental assistance.  Reply at 11.  However, the issue in Huynh was whether the
     FHAA applied to a public agency that administered Section 8 housing vouchers.  Huynh,

28   at *7.

United States District Court
Northern District of California

Defendant discriminated against her based on its denial of her reasonable accommodation request.[13]  FAC ¶¶ 70–71, 77–79.  Plaintiff alleges that she was "otherwise qualified" to receive Section 8 tenant-based housing assistance.  Id. ¶ 7.  Plaintiff further alleges that, because of her disability, Defendant's Housing Choice Voucher Program cannot provide her with the benefits she is entitled to receive—a safe home.  Id.; Pl.'s Opp. at 9.  Plaintiff also alleges that the only possible reasonable accommodation is the HO, which would allow her to purchase a residence of her choice.  See id.  Defendant argues that neither the RA nor the ADA require Defendant to create an HO program to accommodate Plaintiff's disability.  MTD at 9; Reply at 7.

Title II of the ADA "prohibits public entities from both discriminating against qualified individuals because of a disability and excluding such individuals from benefitting from or participating in a public program because of their disability."  Razon v. Cty. of Santa Clara, No. 17-CV-00869-LHK, 2018 WL 405010, at *9 (N.D. Cal. Jan. 12, 2018) (citing 42 U.S.C. § 12132).  To state a claim under Title II, Plaintiff must plead sufficient facts to show that: "(1) [s]he is a qualified individual with a disability; (2) [s]he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of h[er] disability."  Updike v. Multnomah Cnty., 870 F.3d 939, 949 (9th Cir. 2017).  Failure to provide reasonable accommodations can constitute discrimination.  Id. at 951.  "[T]he issue of reasonableness depends on the individual circumstances of each case," and the determination of reasonableness "requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations."  Wong v. Regents of Univ. of Cal., 192 F.3d 807, 818 (9th Cir. 1999).

Section 504 of the Rehabilitation Act extends the ADA's protections to "any

_____

[13] Plaintiff sufficiently alleges that the RA and ADA apply to Defendant.  Defendant does not dispute this point.  See FAC ¶¶ 67–69, 76.

1  program or activity receiving federal financial assistance." 29 U.S.C. § 794(a); see also

2  Zukle v. Regents of Univ. of California, 166 F.3d 1041, 1045 (9th Cir. 1999).

3  Accordingly, the RA and ADA claims can be analyzed together because "there is no

4  significant difference in analysis of the rights and obligations created by the ADA and the

5  Rehabilitation Act." Zukle, 166 F.3d at 1049 n.11.

6         The RA and ADA only require Defendant to provide "reasonable

7  accommodations." See, e.g., Zukle, 166 F.3d at 1049 (emphasizing that the defendant was

8  only required to provide plaintiff with reasonable accommodations); Alexander v. Choate,

9  469 U.S. 287, 300 (1985) ("while a grantee need not be required to make 'fundamental' or

10  'substantial' modifications to accommodate the handicapped, it may be required to make

11  'reasonable' ones.").

12         For the same reasons that apply to the FHA claim, Plaintiff's claims fail.  Defendant

13  is not required to implement an HO as a "reasonable accommodation" when it has

14  otherwise opted not to implement the program.  See 24 C.F.R. § 982.625(d)(2).  Defendant

15  exercised its discretion in determining that implementing an HO program was

16  unreasonable due to financial hardship.  See FAC ¶¶ 47, 49.  There is nothing in the RA or

17  the ADA that requires Defendant to implement a new program.[14]  As Defendant points out,

18  "a necessary element to both [RA and ADA] claims is that the public agency provides the

19  benefits or services in question."  Reply at 8.  Granting Plaintiff's request for reasonable

20  accommodation in the form of the HO would require Defendant to provide Plaintiff a

21  benefit and service that it does not offer to anyone else—disabled or non-disabled.  Neither

22  the RA nor the ADA require Defendant to provide extra services that they do not otherwise

23  provide.  See, e.g., Alexander, 469 U.S. at 302 (holding that a reduction in Medicare

24

25  [14] Defendant also argues that "the [HO] is an entirely separate and distinct program
   available for PHA's to implement."  MTD at 10.  While neither the ADA nor RA require
26  Defendant to create new programs or services, they may require it to make
   accommodations to their existing programs—such as their Section 8 voucher program. See
27  Davis v. California Health & Hum. Servs. Agency, No. C 00-CV-2532 SBA ADR, 2001
   WL 1772763, at *1 (N.D. Cal. Aug. 21, 2001) (citing Olmstead v. Zimring, 527 U.S. 581,
28  603 n.14 (1999)).  However, the Court does not reach this issue.

United States District Court
Northern District of California

1    coverage for inpatient care did not deny disabled participants "meaningful access" to the

2    service because it was applied equally to all participants, disabled or non-disabled).

3        Therefore, the Court GRANTS Defendant's motion to dismiss Plaintiff's RA and

4    ADA claims.

5                        **4.    Due Process Claim**

6        Defendant also moves to dismiss Plaintiff's Due Process claim.  MTD at 11–12.

7    Plaintiff brings this claim under 42 U.S.C. § 1983, alleging that Defendant violated her

8    Due Process rights by refusing to provide a reasonable accommodation in the form of the

9    HO program.  FAC ¶¶ 84–87.  Plaintiff alleges that Defendant precluded her from taking

10   advantage of Defendant's housing assistance programs because of her disability.  Id.

11   Plaintiff further alleges that Defendant did not provide sufficient means of redress of the

12   denial of her reasonable accommodation request.  Id.  Defendant argues that Plaintiff fails

13   to state a claim because Plaintiff does not have a protected right to assistance in purchasing

14   a home.  MTD at 11.

15       The Due Process Clause of the Fourteenth Amendment prohibits a state from

16   "depriv[ing] any person of life, liberty, or property, without due process of law."  U.S.

17   Const. Amend. XIV, § 1; Mathews v. Eldridge, 424 U.S. 319, 332 (1976).  "To state a

18   claim under § 1983, a plaintiff must allege the violation of a right secured by the

19   Constitution and laws of the United States and must show that the alleged deprivation was

20   committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48

21   (1988).  Thus, to state a procedural or substantive due process claim, the plaintiff must "as

22   a threshold matter" show that she was deprived of a "life, liberty, or property" interest

23   protected by the Constitution.  Nunez v. City of L.A., 147 F.3d 867, 871 (9th Cir. 1998).

24   In addition to the deprivation of a protected interest, procedural due process claims require

25   a denial of adequate procedural protections.  Kildare v. Saenz, 325 F.3d 1078, 1085 (9th

26   Cir. 2003).

27                        **a.    Property Interest**

28       The first question here is whether Plaintiff has a constitutionally protected property

United States District Court
Northern District of California

28

interest—a "legitimate claim of entitlement"—in Section 8 housing assistance in the form of an HO entitling her to procedural and substantive rights under the Fourteenth Amendment.[15]  See Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1, 7 (1979) ("to obtain a protectable right[,] a person must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it.") (internal citations and quotations omitted).  "A legitimate claim of entitlement is created 'and [its] dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'"  Nozzi v. Hous. Auth. of City of L.A., 806 F.3d 1178, 1191 (9th Cir. 2015), as amended on denial of reh'g and reh'g en banc (Jan. 29, 2016) (quoting Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972)).

Under some circumstances, applicants for housing benefits under Section 8 are entitled to due process protection because they have a property interest in Section 8.[16]  See,

---

[15] At some points in Plaintiff's brief, she also seems to argue that she was denied equal access to Section 8 benefits (generally) by virtue of her disability.  However, even in these allegations, the crux of Plaintiff's argument is that 24 C.F.R. § 982.625(d)(2)—which grants PHAs "total latitude" in determining whether creating an HO is reasonable—denied her access to the HO program, to which she is otherwise qualified for and would benefit from.  FAC ¶¶ 6–7.  Plaintiff alleges that "the regulation, as applied, discriminates against [her], and other similarly situated disabled persons, on the basis of her disability by allowing a PHA to deny her access to the Section 8 tenant-based housing assistance to which she is otherwise entitled and from which she would otherwise benefit if not for her disability."  FAC ¶ 7; see also id. ¶ 87 ("24 CFR § 982.625(d)(2) which provides PHA's like Defendant with sole discretion . . . is unconstitutional as applied here because it precludes [Plaintiff], and other similarly situated disabled persons, from taking advantage of Defendant's housing assistance programs . . . therefore violating her rights" under the Fourteenth Amendment); Pl.'s Opp. at 12 (challenging 24 C.F.R 982.625(d)(2) "to the extent that it gives [PHAs] . . . sole discretion to deny . . . an individual who otherwise qualifies and is approved to receive Section 8 benefits . . .").  In each of these instances, Plaintiff alleges that she was deprived of her property interest in Section 8 tenant-based housing assistance, to which she is otherwise entitled and from which she would benefit if not for her disability.  However, she alleges this in the context of Defendant's denial of her HO reasonable accommodation request.  Thus, Plaintiff's substantive Due Process claim boils down to the same core issue: Does Plaintiff have a protected property interest in homeownership assistance through Section 8's HO program?  See Nunez, 147 F.3d at 871 ("To establish a substantive due process claim, a plaintiff must, as a threshold matter, show a government deprivation of . . . property.").

[16] Notably, "[a]ll of the cases the Court has found that have allowed a due process claim in

United States District Court
Northern District of California

1   e.g., Griffeth v. Detrich, 603 F.2d 118, 120 (9th Cir. 1979) (holding that "interest in

2   general relief benefits is an interest protected by the Fourteenth Amendment"); Nozzi, 806

3   F.3d at 1191 (holding that the plaintiffs—recipients of a voucher program—have a

4   property interest in Section 8 housing benefits); Holbrook v. Pitt, 643 F.2d 1261, 1278 (7th

5   Cir.1981) ("Courts have held in a variety of circumstances that certified tenants in Section

6   8 programs have protectable property interests under the due process clause.").

7       Plaintiff contends that she has a constitutionally protected property interest in her

8   Section 8 benefits. Pl.'s Opp. at 10–11. She relies on Ressler v. Pierce, in which the Ninth

9   Circuit held that Section 8 applicants under the Part 886 Set-Aside program have a

10  protected property interest in receiving Section 8 benefits. 692 F.2d 1212, 1215–16 (9th

11  Cir. 1982). Ressler grounded that property interest in: (1) the limitation on the project

12  owner's discretion in selecting tenants and (2) the congressional purpose of aiding lower-

13  income families in obtaining decent housing. Id. Ressler distinguished City of Santa Clara

14  v. Andrus, 572 F.2d 660 (9th Cir. 1978) and Roth, 408 U.S. at 569–70 (1972), where the

15  courts found no property interests. "Common to both Roth and City of Santa Clara was

16  the fact that the entity charged with dispensing governmental benefits had 'unbridled

17  discretion' in the selection process." Ressler, 692 F.2d at 1215 (emphasis added); cf.

18  Burgess, 98 F. App'x at 607 (holding that plaintiff "is unable to claim an entitlement to

19  further extension of her Section 8 voucher, as such extensions were discretionary under the

20  regulation.").

21      The Ninth Circuit has drawn a distinction between cases where the "entity charged

22  with dispensing governmental benefits had 'unbridled discretion' in the selection process"

23  and cases where they had "only limited discretion." Ressler, 692 F.2d at 1215. Where the

24

25  this context . . . have involved project-based housing programs." Espino v. Winn
    Residential, No. 18-CV-02729-JCS, 2018 WL 4774959, at *7 (N.D. Cal. July 27, 2018),
26  report and recommendation adopted, No. C 18-02729 JSW, 2018 WL 4775601 (N.D. Cal.
    Aug. 21, 2018). "In tenant-based housing, an assisted family selects their home and their
27  assistance travels with them should they move. In project-based housing, rental assistance
    is provided to families who live in designated developments or units." Id. n.7 (quotation
28  omitted). The HO is a tenant-based housing program. Pl.'s Opp. at 3.

entity had "unbridled discretion," the applicant was held to have an insufficient property interest, because the "dimensions" of an asserted property interest are "defined by existing rules . . . or understandings that secure" those benefits.  Roth, 408 U.S. at 577.

In the motion hearing, Defendant argued that while Plaintiff may have a property interest in Section 8 rental assistance, she does not have a property interest in homeowner's assistance under Section 8's HO program.  See also Reply at 9 ("Plaintiff must show an entitlement to assistance in purchasing a home.").  Plaintiff argued that Defendant characterized the issue too narrowly, again citing Ressler, 692 F.2d at 1214–15.  Plaintiff argued that, under Ressler, her property interest is based on the qualifications for Section 8 program benefits (generally), not in the specific type of rental benefits.  Plaintiff added that among the types of rental assistance programs is the HO program.

The Court rejects Plaintiff's argument because property interests are "created and their dimensions are defined by existing rules or . . . understandings that secure certain benefits."  Roth, 408 U.S. at 577.  In Ressler, the plaintiffs were a group of applicants for HUD rent subsidies under the Section 8 Set-Aside Program.  692 F.2d at 1213–14.  The issue in Ressler was whether an applicant for Section 8 benefits has a protectible property interest in those benefits.  Id. at 1215.  First, Ressler noted that the general provisions of Section 8 gave property owners broad discretion to select tenants.  Id.  Then, Ressler looked at the regulations and guidelines specifically governing the Part 886 Set-Aside Program.  Id.  Ressler noted that the Part 8 Set-Aside Program was extensively regulated and, thus, concluded that the plaintiffs had a property interest in their Section 8 benefits.  Id.; see also Griffeth, 603 F.2d at 121 ("Here the authorizing statute coupled with the implementing regulations of the county creates a legitimate claim of entitlement . . .");  Roth, 408 U.S. at 577–78 ("Just as the welfare recipients' 'property' interest in welfare payments was created and defined by statutory terms, so the respondent's 'property' interest in employment . . . was created and defined by the terms of his appointment.").

Plaintiff was not denied access to Section 8 generally.  Plaintiff enjoyed access to the Section 8 programs that Defendant offered to all other Lake County residents.  See

1    FAC ¶¶ 28–29 (noting that Defendant offers the tenant-based Housing Choice Voucher

2    Program and the Emergency Housing Program); MTD at 3 (Plaintiff received tenant-based

3    housing assistance under the HCV program).  In the motion hearing, Defendant also

4    pointed out that Plaintiff is still receiving Section 8 rental assistance from the county under

5    the HCV program.  Plaintiff did not dispute this.  Plaintiff was therefore not denied access

6    to the Section 8 benefits that Defendant offered.  The specific issue here is whether she has

7    a protected property interest in Section 8's HO program.  Accordingly, the Court takes a

8    similar approach to <u>Ressler</u> and looks more narrowly at the rules and regulations governing

9    the implementation of the HO program to determine if Plaintiff has a property interest in

10   her Section 8 benefits.

11          Here, the existing rules and regulations governing the implementation of the HO

12   program are limited and grant the PHA vast discretion.  This vast discretion makes the HO

13   program distinct from some other Section 8 benefit programs.[17]  Section 8 and its

14   implementing regulations give the PHA the "sole responsibility" to determine that

15   homeownership assistance is not a "reasonable" accommodation.  24 C.F.R. §

16   982.65(d)(2).  Because PHAs are not mandated to offer homeownership assistance, there is

17   no "legitimate claim of entitlement" to such assistance.[18]  <u>Roth</u>, 408 U.S. at 577.  Further,

18   under 24 C.F.R. § 982.554(c)(1), "[t]he PHA is not required to provide the applicant an

19   opportunity for an informal review" for "[d]iscretionary administrative determinations by

20   the PHA."  For these reasons, the Court finds that Plaintiff does not have a property

21   interest in Section 8's HO.

22                      **b.      Conclusion as to Due Process Claim**

23   _____

24   [17] For example, Section 8's Housing Voucher program—which Defendant participates
     in—is regulated by "an extensive set of statutory provisions and regulations [governing]
25   the calculation of the subsidy that must be paid on behalf of each tenant."  <u>Nozzi</u>, 806 F.3d
     at 1184, <u>as amended on denial of reh'g and reh'g en banc</u> (Jan. 29, 2016).

26   [18] Even if Plaintiff expected to receive the HO accommodation based on her
     communication with Defendant's employees, "any expectation [was] just that, and nothing
27   more. They did not rise to the level of entitlements; they were 'not so firm and definite . . .
     as to be "property" in a constitutional sense.'"  <u>See Nunez</u>, 147 F.3d at 873 (quoting <u>Bigby</u>
28   <u>v. City of Chicago</u>, 766 F.2d 1053, 1056 (7th Cir. 1985)).

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Because Plaintiff has not asserted a cognizable property interest in Section 8's HO, the Court concludes that Plaintiff has not stated a claim for violation of her due process rights.  See Nunez, 147 F.3d at 871 ("[A] plaintiff must, as a threshold matter, show a government deprivation of . . . property"); Burgess, 98 F. App'x at 605 (ending the due process inquiry after finding no property interest).  For these reasons, the Court GRANTS Defendant's motion to dismiss Plaintiff's Due Process claim.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motions to dismiss all claims.  Because amendment would prove futile, the Court DENIES leaves to amend.

**IT IS SO ORDERED.**

Dated: March _25_, 2024



CHARLES R. BREYER
United States District Judge

33